## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIAM G. CURTIS, | ) | |
| | ) | Civil No. 2:04-CV-443 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Arising from No. 2:98-CR-78 |
| | ) | |
| UNITED STATES OF | ) | |
| AMERICA, | ) | |
| Respondent | ) | |

## RESPONSE TO PETITIONER'S § 2255 PETITION

Comes now the United States of America, by counsel, Joseph S. Van Bokkelen, United States Attorney for the Northern District of Indiana, and makes the following response to the Petitioner's § 2255 petition:

### Introduction

Curtis has filed a § 2255 petition raising seven broad claims and requesting an evidentiary hearing.  In his first claim, he contends that his attorney was ineffective in failing to raise objections to the two counts charging violations of 18 U.S.C. § 924(j). In his second broad claim, he alleges various errors in this court's sentencing determinations regarding drug quantity and criminal history and an alleged lack of notice of the maximum penalties

1

he faced. His third claim seeks the benefit of *Blakely v. Washington*. Fourth, Curtis claims his attorney was ineffective for failing to challenge a search that produced evidence against him. Fifth, he attacks the sufficiency of the evidence on his 18 U.S.C. § 924(j) convictions. Sixth, Curtis claims that his counsel was ineffective in failing to make certain challenges to his 18 U.S.C. § 924(c) conviction.  Seventh, Curtis quarrels with testimony given by Tajuan Allen, alleging that it violates the Confrontation Clause.

Curtis' challenges to the § 924(j) counts are specious in view of the decision of the Court of Appeals on his direct appeal.  Any challenge to his other sentences is a waste of ink in view of his two consecutive life sentences on the § 924(j) counts.  Nonetheless, this response will demonstrate that all his claims are without merit.

### Procedural History

Petitioner William G. Curtis was convicted following a jury trial of conspiracy to possess with intent to distribute in excess of 50 grams of crack cocaine, in violation of 21 U.S.C. § 846; employing a minor in the crack cocaine conspiracy, in violation of 21 U.S.C. § 861(a)(1); possession with intent to distribute in excess of 5 grams of crack cocaine, in violation of 21 U.S.C. § 841; two counts of causing the death of a person in the course of using a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) and (j); and one count of carrying and using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).

Petitioner was arrested pursuant to a warrant issued on a criminal complaint charging him and three other defendants with conspiracy to possess with intent to distribute crack cocaine.  (R. 1)   The Magistrate Judge found that there was probable cause to believe that the petitioner committed the offense and ordered him detained pending trial.  (R. 18, 20)  A federal grand jury returned a three-count indictment charging Petitioner together with Jamell L. Rouson, Tajuan D. Allen[1], Driefus Harbin[2] and Donnell M. Hanyard[3] with conspiracy to possess with intent to distribute and to distribute in excess of 50 grams of crack cocaine, possession with intent to distribute crack cocaine, and carrying a .38 caliber revolver during a drug trafficking offense.  (R. 21) Curtis pled not guilty to the indictment.  (R. 28)

---

[1]   Tajuan Allen pled guilty to counts 1, 2, 4, 5, 6 and 7 of the third superseding indictment pursuant to a plea agreement and testified as a government witness.  (R. 537, 540; Tr. 1306). Allen was sentenced to 180 months imprisonment. (R. 812).

[2]   Harbin, Hicks and Tyler were convicted after a jury trial of conspiracy to possess with intent to distribute and to distribute crack cocaine and possession with intent to distribute crack cocaine.  Hicks and Tyler were also found guilty of another count of possession with intent to distribute crack cocaine. (R. 795)  Their convictions and sentences were affirmed on appeal.  *United States v. Harbin*, 368 F.3d 801 (7th Cir.2004).

[3]   Hanyard pled guilty to the conspiracy count pursuant to a plea agreement and testified as a government witness.  (R. 100; Tr. 516)  As the result of a §5K1.1 motion by the government, Hanyard was sentenced to 48 months imprisonment.  (R. 665)

The grand jury returned a superseding indictment, adding a number of counts and additional defendants Herman Hicks[4], Radar Tyler[5], Dontaye Allen, Yhosogn Jiles[6] and John King.[7]  (R.50)   Curtis pled not guilty to the superseding indictment.  (R. 94)

A third superseding indictment was returned on September 17, 1998 against Curtis and his codefendants.  (R. 106) Count 1 of the third superseding indictment charged Curtis and his codefendants  with conspiracy to possess with intent to distribute and to distribute in excess of 50 grams of crack cocaine.  Count 2 charged the defendants with using a person under the age of eighteen in the crack cocaine conspiracy. Count 3 charged Curtis and Rouson with carrying and using a firearm during the crack cocaine conspiracy and causing the death of Omar King on April 24, 1998.  Count 4 charged Curtis, Rouson, and Tajuan Allen with carrying and using a firearm during the crack cocaine conspiracy and causing the death of Donterell Hamilton on May 27, 1998. Count 6[8] charged Curtis and other defendants

---

[4]  See footnote 2, *infra*.

[5]  See footnote 2, *infra*.

[6]  Jiles was convicted after trial on a fourth superseding indictment of conspiracy to posses with intent to distribute in excess of 50 grams of crack cocaine and two counts of possession with intent to distribute in excess of 5 grams of crack cocaine.  (R. 297, 333) Jiles was sentenced to a term of imprisonment of 365 months. Jiles was also convicted in another case with conspiracy to distribute marijuana and distribution of marijuana.  His conviction was affirmed on appeal.  *United States v. Jiles*, 2002 WL 31553927 (7th Cir. 2002).

[7]  John King pled guilty to the conspiracy count pursuant to a plea agreement and testified for the government.  (R. 190, 192; Tr. 1645)   As a result of a government motion for a downward departure, King was sentenced to 78 months imprisonment.  (R. 661)

[8]Curtis was not charged in Count 5 of the Third Superseding Indictment.

with possession with intent to distribute in excess of five grams of crack cocaine on May 27, 1998. Count 7 charged Curtis and other defendants with carrying a .40 caliber semi-automatic pistol during and in relation to the drug trafficking offense of possession with intent to distribute crack cocaine. Curtis pled not guilty to the third superseding indictment. (R. 140)

Although Curtis was eligible for the death penalty on the 18 U.S.C. § 924(j)(1) counts, the Attorney General did not authorize seeking the death penalty in this case. (R. 485)

Rouson and Curtis proceeded to jury trial on the third superseding indictment. (R. 604) At the close of the government's evidence on the ninth day of the trial, Rouson and Curtis moved for judgments of acquittal. (R. 614; Tr. 1983, 1999) The court denied the motions. (R. 614, 2009-13) After evidence by Rouson, rebuttal evidence by the government and surrebuttal evidence by Rouson, the parties rested. (Tr. 2020, 2103, 2158) Neither Rouson nor Curtis renewed their motions. The jury found Rouson and Curtis guilty as charged. (R. 618, 623-24) The issue of the drug quantity for mandatory minimum sentences was submitted to the jury. (Tr. 2278-79, 2281-85, 2287-88)

Taking a conservative view of the trial evidence, this Court found Curtis responsible for the distribution of in excess of 1.5 kilograms of crack cocaine during his time in the conspiracy, for a base offense level of 38. (STr. 35) This Court enhanced his offense level by two levels for employing juveniles in the conspiracy for an adjusted offense level of 40 (STr. 44)

On June 1, 2001, Curtis was sentenced to life imprisonment on Count 1, to be served concurrently with 480 month sentences on Counts 2 and 6. (R. 679) He was also sentenced to life imprisonment on Counts 3 and 4 and 60 months imprisonment on Count 7, each sentence to be consecutive to all other sentences. (R. 679).

Petitioner appealed his convictions to the United States Court of Appeals for the Seventh Circuit. That court affirmed his convictions in a published opinion on March 31, 2003. *United States v. Curtis*, 324 F.3d 501 (7th Cir. 2003) The Supreme Court denied Petitioner's petition for writ of certiorari on November 3, 2003. *Curtis v. United States*, 124 S. Ct. 505 (2003).

On October 21, 2004, Petitioner filed a timely motion pursuant to § 2255, raising a number of claims, including the inevitable claim of ineffective assistance of counsel and a *Blakely* claim with respect to sentencing.

## Statement of Facts

The facts in this case are set out in the Court of Appeals' published opinion on this matter, and are quoted below in full. See *Curtis*, 324 F.3d at 503-04:

> The facts in this case are typical of modern crack cocaine conspiracies. The central figure was Tajuan ("Ty") Allen, who ran an elaborate crack distribution operation. Set against a backdrop of violent street gang turf wars and drug profit feuds, Allen's cohorts left behind them a trail of wounded and murdered friends and enemies, as they supplied huge quantities of crack to addicts in the Gary area before the police finally shut them down.
>
> Although neither Rouson nor Curtis lived in the 22nd Avenue section of Gary, they both ran with the 22nd Avenue Boys, a neighborhood street gang affiliated with the Vice Lords. They were able to sell drugs on gang turf because of their relationship with Allen. Rouson, whom Allen met through a

mutual friend, was described by Allen at trial as his "guy"--someone he could trust. And in fact Allen did trust Rouson to look after things at his crack houses while Allen was away taking care of other business. Curtis and Allen have known each other since grade school. Curtis operated as a dealer at Allen's various crack houses. Some testimony suggested that Curtis was told to stay away from Allen's drug operations for a time, but Allen admitted that he allowed Curtis to sell out of his house on at least one occasion after that order, because Rouson told him that Curtis had fallen on hard times and needed help getting back on his feet.

For their part in the crack cocaine distribution conspiracy, Rouson and Curtis were charged with conspiracy to possess with intent to distribute in excess of fifty grams of crack cocaine in violation of 21 U.S.C. § 846; employment of a minor in the distribution of crack cocaine in violation of 21 U.S.C. § 861(a)(1); two counts of the use of a firearm to commit murder in furtherance of a drug conspiracy for two separate killings in violation of 18 U.S.C. § 924(c) and (j); two counts of possession with intent to distribute more than five grams of crack cocaine (Curtis was only charged with one of the possession counts) in violation of 21 U.S.C. § 841; and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

After a jury trial, Rouson and Curtis were both convicted on all charges stemming from their participation in the Allen crack cocaine conspiracy. The primary witnesses against them at trial were fellow conspirators-turned-government-informants (including Allen himself) who provided detailed testimony about the conspiracy's members and its operations. The testimony portrayed Rouson and Curtis as gang members and crack dealers whose affiliation with Allen enabled them to sell crack out of the different houses that he operated in the 22nd Avenue neighborhood. Although Allen described the conspiracy as a floating operation that shifted locations frequently to avoid police detection, the nuts-and-bolts of the business were fairly straightforward. Allen fronted, sold or lent crack to the individuals who sold out of his various crack houses. The drugs were cut and bagged by Allen and his co-conspirators on-site or at the "chill house" where Allen stored weapons and drugs, sold dealer quantities of drugs, and where members of the conspiracy went to "chill." Allen relied on the presence of multiple sellers to attract customers to his crack houses, and the sellers in turn served customers on a rotating basis. Occasionally, Allen even allowed individuals to sell from his houses drugs that they purchased from other dealers, all for the apparent purpose of better meeting the demands of the Gary market.

7

In addition to the drug charges, Rouson and Curtis were each charged with two homicides allegedly committed in furtherance of the conspiracy. The first count stemmed from the murder of Omar King, who was killed in a drive-by shooting as part of a back-and-forth exchange between rival gang members over drug turf. The jury heard testimony from Allen about Rouson's alleged confession to his role in the King homicide. That confession inculpated Curtis as well. According to Allen, Rouson said that he and Curtis went on "a mission" to Marshalltown, a rival gang neighborhood, to take care of someone who was "slipping out there in Marshalltown." Allen understood this to mean that Rouson and Curtis "had killed somebody out there."

The jury also heard about the King killing from co-conspirator Donnell Hanyard, who pleaded guilty to the conspiracy charge and testified for the government. Hanyard testified that he pieced together the story behind King's murder based on two conversations that he had with Rouson over the course of a week. In the first conversation, Rouson told Hanyard to "watch out for Marshalltown, because beef on for life." Rouson refused to elaborate, and later that evening Hanyard's mother's home was riddled with gunfire by a "Marshalltown car," presumably in retaliation for the King killing. A week later, Rouson asked Hanyard how he planned to retaliate against Marshalltown for shooting his mother's house up, and it was during this conversation that Rouson told Hanyard that he had shot at a Marshalltown drug dealer while riding in a car driven by Curtis.

The second § 924(j) charge concerned the murder of Donterrell Hamilton. Rouson shot and killed Hamilton at Allen's direction after an incident in which Hamilton was suspected of stealing drugs from Curtis while the three sold crack together at one of Allen's crack houses. Allen testified that after Hamilton denied stealing Curtis's drugs, Allen suggested that Hamilton accompany Rouson and himself on a "mission" to the Delaney neighborhood. With Allen driving, Rouson and Hamilton rode out to a remote location where Allen told Hamilton that it was his "death day." Rouson then placed Allen's gun to the back of Hamilton's head, ordered him out of the car, and shot Hamilton ten times in the side, back and stomach; Hamilton died from his gunshot wounds. Rouson and Allen then hid the gun and returned to Allen's crack house to tell the others that they had killed Hamilton. When Curtis expressed disbelief, Rouson, Hanyard and Curtis drove out to see Hamilton's body.

**Argument**

**I.     Petitioner Is Not Entitled to an Evidentiary Hearing Because**

**the Record Establishes that his Claims Are Meritless.**

To be entitled to an evidentiary hearing, a § 2255 petitioner must allege facts that, if proven, would entitle him to relief. *Stoia v. United States*,  22 F.3d 766, 768 (7th Cir.1994) Conclusory allegations do not satisfy the requirement of allegation of facts. *See Rodriguez v. United States*, 286 F.3d 972, 986 (7th Cir. 2002); *Stein v. United States*, 309 F.2d 625, 627 (9th Cir. 1968)( "It is well-established that mere conclusory allegations are not sufficient to warrant relief under a §2255 motion.") The court can deny a petition without an evidentiary hearing where the motion, files and records conclusively show that the prisoner is entitled to no relief.  *Cooper v. United States*, 378 F.3d 641-42 (7th Cir. 2004)

As we will show below, Petitioner's allegations fall short of the mark and the record establishes that he is not entitled to an evidentiary hearing or relief.

**II.     Curtis' § 924(j) Convictions Are Not Flawed so He Was Not**

**Denied the Effective Assistance of Counsel.**

Curtis first contends (Pet. at 3-8) that he was denied the effective assistance of counsel because his attorney failed before the district court to challenge the validity of the § 924(j) counts of the indictment.  His claim is meritless.

In order to prevail in this Court on his Sixth Amendment claim, Petitioner must show that his attorney rendered substandard assistance and that he was prejudiced as a result.  *E.g.*, *Hill v.  Lockhart*, 474 U.S. 52, 57 (1985); *Griffin v. United States*, 109 F.3d 1217, 1219 (7th Cir.1997).  Petitioner must demonstrate first that his counsel's conduct was unreasonably

deficient. *United States v. Draves*, 103 F.3d 1328, 1335 (7th Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  In assessing the first component, the proper standard is that of "reasonably effective assistance." *Strickland*, *supra*, 466 U.S. at 698.  The defendant must show that counsel's representation fell below an objective standard of "reasonableness." *Id*. at 688.  Moreover, "a court must indulge the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

"Even if a [petitioner] can bear the heavy burden of demonstrating this type of egregious deficiency," he must still meet the prejudice prong of *Strickland*. *United States v. Draves*, 103 F.3d 1328, 1335 (7th Cir. 1997). In order to satisfy this requirement, "[i]t is not enough for the  defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693-94.  The petitioner "must also show that but for the deficient performance the trial would have turned out  differently." *Draves*, 103 F.3d at 1335 (citing *Strickland*, 466 U.S. at 690 (1984).  Petitioner fails to meet either of the two prongs of the *Strickland* test.

In particular, Curtis fails to establish prejudice. Curtis states that  the indictment was defective, claiming that two § 924(j) convictions cannot be based on the same underlying drug offense.  In support of his claim, Rouson relies on the decision of the Court of Appeals in *United States v. Cappas,* 29 F.3d 1187, 1190 (7th Cir.1994).  See Pet. at 8. In *Cappas*, the court did hold that the use of several guns in the course of a single drug trafficking offense cannot support multiple § 924(c) convictions for the use of a firearm in relation to a drug

trafficking crime.  However, Curtis' argument fails to recognize the decision of the Court of Appeals in his own case refusing to extend the logic of *Cappas* to convictions under § 924(j). *United States v. Curtis*, 324 F.3d 501, 508-09 (7th Cir. 2003). Curtis' attorney made the identical argument to the Court of Appeals that Curtis now makes, and the Seventh Circuit specifically rejected his argument.  It found "no double jeopardy violation ... impos[ing] two life sentences under § 924(j)(1)." *Id.* at 509. Curtis' claim is barred by the law of the case. *United States v. Taglia*, 922 F.2d 413, 417-18 (7th Cir.1991). Because it was perfectly proper for the government to charge and the jury to convict the defendant of two Section 924(j) violations for the two violent murders he and Rouson perpetrated as part of the same drug conspiracy, his attorney was not ineffective for failing to raise that challenge to this court.

Curtis also contends briefly (Pet. at 8) that the evidence was insufficient to convict him of the 18 U.S.C. § 924(j) charge because there was insufficient evidence that the murders were linked to a drug offense. This claim too is specious. Once again, Curtis' counsel raised the sufficiency claim to the court of appeals. That court rejected his argument on both murders. As to Hamilton's killing, the court found that "the jury was entitled to choose the version urged by the prosecutors...that Allen ordered Hamilton killed to keep members of the drug conspiracy in line." *Curtis*, 324 F.3d at 506. As to the King murder, the court again found "ample corroborating evidence" that King was murdered "as part of a back-and-forth exchange between rival gang members over drug turf." *Id.* at 504, 507. The law of the case bars Curtis' attempt to reraise the issue.

### III.    The Court's Sentencing Conclusions Were Not Erroneous

Under his next "Argument" (Pet. 8-14), Curtis raises several separate challenges to the sentences this court imposed. First, he claims that the court erred in calculating the drug quantity attributable to him under U.S.S.G. § 2D1.4.

The trial testimony and jury findings established that Curtis was engaged in a conspiracy to distribute in excess of fifty grams of crack cocaine. The evidence was more than sufficient to establish that conspiracy. Indeed the Court of Appeals rejected Curtis' claim of insufficiency of the evidence. *Curtis*, 324 F.3d at 505-06.

This Court's determination of drug quantity in excess of 1.5 kilograms was also abundantly supported by the evidence. Tajuan Allen was selling at least a couple of kilograms per month. Str. 15. The conspiracy extended for years, and this court correctly found that Curtis was a part of the conspiracy throughout that time. Str. 33-35.

Appended to his claim in regard to drug quantity, Curtis makes two other allegations that merit little attention. First, he alleges that "reliable information indicates" that his criminal history category significantly overrepresents the seriousness of his criminal history or the likelihood he will commit future crimes. The defendant received six criminal history points, with a criminal history category of III, based on a 1994 Theft conviction, the fact that defendant was on probation for that conviction at the time of the offense, and the fact that the theft offense occurred less than two years before the instant convictions. But the defendant does not dispute this conviction or its date. Furthermore, all of the evidence introduced at trial made it quite clear that looking solely at the defendant's court record if anything *underrepresented* the scope of his past criminal activity. Defense counsel was not ineffective

12

for failing to pursue this claim at sentencing. In any event, the defendant's criminal history category matters little in light of the mandatory life sentences he received for the two 18 U.S.C. § 924(j).

The defendant also claims, in reliance on *United States v. Kelly*, 29 F.3d 1107 (7th Cir. 1994), that his sentence was unlawfully enhanced without notice to him required by 21 U.S.C. § 851. That statement requires that before any enhancements in the drug statutes are assessed to a defendant, that he receive prior notice. However, there are at least two significant problems with the defendant's claim. First, *Kelly* was expressly overruled by the Court of Appeals in *United States v. Ceballos*, 302 F.3d 679, 690-92 & n.4 (7th Cir. 2002). Second, no § 851 notice was ever filed because those penalties did not apply to Curtis. Curtis was convicted under 21 U.S.C. §§ 841(a)(1) and 846 of conspiracy to distribute 50 grams or more of cocaine base. He was thus eligible for a sentence of 10 years to life. Had he had a prior conviction of a felony drug offense, his sentence would have been 20 years to life. See 21 U.S.C. § 841(b)(1). In any event, the issue is moot since in either case the defendant was eligible to receive a sentence of life imprisonment. His actual sentence of 480 months was less than that and within the statutory range under both the enhanced and standard penalties.

## IV.    The Defendant Cannot Raise a Blakely Claim on Appeal

Curtis next (Pet. 15-16) raises the inevitable claim under *Blakely v. Washington*, 124 S. Ct. 2531, 2547 (2004). In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court applied *Blakely* to invalidate portions of the United States Sentencing Guidelines. Curtis contends that his attorney was ineffective for failing to request that the jury find his drug quantity beyond a reasonable doubt. While *Booker* does not require any such finding

to be made by a jury, it does make the judge's guideline calculations non-mandatory. None of this matters to Curtis' case though, because the Seventh Circuit has held "that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005." *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). Curtis' conviction became final when the Supreme Court declined to review his case on November 3, 2003. Therefore, his attorney was not ineffective for failing to raise a claim that does not apply to his case.

### V.   Curtis' Counsel Was Not Ineffective For Failing to Suppress Evidence

Curtis' fourth contention (Pet. 16) is that his counsel was ineffective for failing to file a motion to suppress evidence seized from 2282 Jefferson Street on May 27, 1998. The cocaine found on Curtis' person and at that location formed the basis for Count 6 of the Superseding Indictment.

2282 Jefferson Street was Allen's last crack house, where Yvette Irving had the front apartment.  (Tr. 580-82, 1218-20, 1403)  At first, the co-conspirators sold from Yvette's apartment in the front.  (Tr. 582)   Then they moved to a back room that had a kitchen, sofa and sofa bed adjoining a bathroom.  (Tr. 582).   At first they sold from the kitchen window and later from the bathroom window.  (Tr. 582-83). Curtis sold out of this house on Jefferson Street only once. (Tr. 1408).

On May 27, 1998, Curtis and Hamilton got into a dispute over stolen crack cocaine. As a result, Curtis gave a .40 caliber Glock pistol to Allen.  (Tr. 618). Allen, Rouson and Hamilton left in Allen's Lumina. (Tr. 1739).  Allen drove down Georgia Street to an isolated area and pulled off the road. (Tr. 1441-42).  Allen told Hamilton it was his death day. (Tr.

14

1443).  Rouson ordered Hamilton out of the car at gunpoint. (Tr.1443-44). Rouson shot Hamilton as Hamilton made a move toward the gun. (Tr. 1445).  Hamilton stumbled backwards and Rouson continued shooting. (Tr. 1445).  Allen and Rouson returned to the apartment about an hour after they left.  (Tr. 621, 1232).

Later that day, Rouson, Curtis, Hanyard and Dreifus Harbin were in the back apartment.  (Tr. 632)  GRIT Officer Thomas Ruzga was led to 2282 Jefferson by the telephone number supplied by Hamilton's girlfriend.  (Tr. 375, 418).   Irving let the police in and pointed them toward the back room.  (Tr. 419-20) When the officer got to the back room, he saw Curtis sitting at the table with a wad of crack cocaine and a stainless steel .38 revolver containing four cartridges. (Tr. 420-21, 485)   Allen had given Curtis a second half ounce of crack.  (Tr. 772-73).   Four and a half grams of crack cocaine were on a mirror along with a razor blade and baggies filled with 3.3 grams of crack cocaine rocks.  (Tr. 420, 469-70, 1637-39)  Money and baggies containing 8.2 grams of crack were found under the sofa bed.  (Tr. 424-25, 467-68, 473-74, 1635-37, 1640)  Another lot of baggies, containing 2.1 grams of crack were found on the sofa.  (Tr. 425, 472)  An additional 3.6 grams of crack was found in the kitchen.  (Tr. 471, 1639). A search of Curtis revealed 10 pink packets containing a total of 1.2 grams of crack cocaine in his shoe.  (Tr. 476-78, 635, 1641) The pink packets were the drugs Hamilton had earlier.  (Tr. 635)

Curtis contends that his counsel was ineffective for failing to raise a Fourth Amendment claim that Irving had no authority to consent to Officer Ruzga's entry into 2282 Jefferson. Curtis appears to allege that he was in "another apartment" separate from Irving's, although the factual basis for this is not clear. Pet. 17.

Curtis' attorney was not ineffective for failing to raise his purported Fourth Amendment claim for at least two independent reasons. First, Curtis would have lacked standing to pursue his claim. "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). A person who is only "present for a business transaction" at someone else's residence has no Fourth Amendment expectation of privacy. *Id.* at 90; see also *United States v. Souffront*, 38 F.3d 809, 821 (7th Cir. 2003). Indeed, in *Carter* the Supreme Court found that two visitors to an apartment who were solely there to bag crack cocaine had no standing to challenge a search. *Id.* at 91. That is quite similar to Curtis, who was at Tajaun Allen's drug house solely to cut and receive crack cocaine and plan the drug-related murder of Hamilton.

As a second point, even had Curtis had standing to challenge the search, Officer Ruzga properly relied on Yvette Irving's consent in entering the back room. It was Irving who gave Tajaun Allen access to the back room of her apartment for drug sales. (Tr. 580-82, 1218-20, 1403). Any person with common authority to the place or effects being searched can give valid consent. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000) (woman with access to hotel room had authority to consent to search of room and containers in the room even though others shared the room). The law presumes that users of property assume the risk that others may consent to a search of areas under their common control. *Matlock*, 415 U.S. at 171-72 & n.7.

Irving allowed Allen, Curtis, and the other 22nd Avenue Boys access to her home for crack sales. They assumed the risk that she would allow others access to the area as well. It

was she who "said you can go inside" to Officer Ruzga and Officer Sorbello (Tr. 420). Under these circumstances, her consent was valid and the officers were justified in entering the apartment.

Both because Curtis lacked standing to contest the search and because Irving's consent permitted officers to search the Jefferson Street apartment, any Fourth Amendment motion inevitably would have failed. Under the *Strickland* test, there is no cause to believe Curtis' counsel was ineffective in failing to file the motion, and no prejudice to Curtis because any motion to suppress would have been denied.

### VI.    The Government Proved Curtis Was Responsible For Hamilton's Murder

Curtis's next challenge (Pet. at 17) is to his conviction under Count 4 for the murder of Donterrell Hamilton in furtherance of the drug conspiracy. This argument, like so many of his others, is meritless and was already rejected on his direct appeal. See *Curtis*, 324 F.3d at 506-07. While Curtis claims that he cannot be held responsible for Hamilton's murder because he was not present at the time, the court of appeals noted that Curtis was liable for the murder under the *Pinkerton* doctrine so long as it was reasonably foreseeable that the murder would be committed in furtherance of the drug conspiracy. *Id.* at 506. The jury found that Hamilton was killed "to keep members of the drug conspiracy in line and to set an example that in-fighting and drug stealing among coconspirators would not be tolerated," and this court and the court of appeals both concluded that there was sufficient evidence for the jury to return that finding. *Ibid.*

For good measure, the defendant also re-raises the argument made by his defense counsel at sentencing, Str. 56-62, that *United States v. Nichols*, 169 F.3d 1255 (10th Cir.

1999) requires a lower sentence on Count 4 because he was not present when Hamilton was killed. This court rejected that argument at sentencing, noting that he was properly convicted under *Pinkerton*. See Str. 67-69. A 2255 petition is not meant to serve as a vehicle to rehash previously rejected arguments and Curtis offers no reasons or cases not cited at the sentencing that would justify a reconsideration of his proper sentence of life imprisonment for his role in Hamilton's death.

## VII.    Curtis' Counsel Was Not Ineffective For Failure to Attack Certain Counts in the Indictment

Near the end of his petition (Pet. at 19-20) Curtis again asserts that his counsel was ineffective for failing sufficiently to attack the 18 U.S.C. § 924(c) counts in the Indictment. While Curtis makes this assertion, he supports it with no law or evidence and the record is quite to the contrary. Mr. Maksimovich vigorously attacked the murder charges brought against Curtis to the jury, to this court at sentencing, and to the court of appeals. All of them rejected his claims. There was no illegal search, and the jury was entitled to believe the testimony of Tajuan Allen regarding the murders of Hamilton and Omar King. Curtis claims that the government was "crafty" for filing so many charges against him, but the reality is that Curtis was guilty of each and every charge brought. No miscarriage of justice has been created by his life sentence.

## VIII.   There Are No Confrontation Clause Issues With Curtis' Case

Curtis' final claim (Pet. 20) relates to the district court's decision to admit the testimony of Tajuan Allen. Although it is not entirely clear from his petition, Curtis appears to be objecting to Allen's testimony that Rouson admitted to him that Rouson and Curtis had

gone on a mission to Marshalltown and a guy got killed. Tr. 1359-60. Curtis claims that permitting Allen to testify to Rouson's statements violates the Confrontation Clause as explicated by the Supreme Court in *Crawford v. Washington*, 124 S. Ct. 1354 (2004).

Allen's argument fails because the admission of Allen's testimony did not violate the Confrontation Clause. Rouson's statement to Allen was properly admitted as a statement of a co-conspirator in furtherance of the drug conspiracy under Federal Rule of Evidence 801(d)(2)(E). The *Crawford* decision excludes only "*testimonial* statements against the accused in a *criminal* case." 124 S. Ct. at 1367 (emphasis in original). However, it has no application to "statements that by their nature [a]re not testimonial—for example, business records or *statements in furtherance of a conspiracy*." *Id.* (emphasis added). Because Rouson's statement to Allen was a statement made by a co-conspirator of Curtis' in furtherance of that conspiracy, *Crawford* does not apply to these statements and they were properly admitted against him.

As a final point, Curtis contends that his lawyer was ineffective for failing to call Rouson to the stand as a witness to rebut Allen's testimony. However, Rouson was on trial and had his own Sixth Amendment right not to testify. That was a right Rouson chose to exercise. Tr. 2135-36. Since the co-conspirator statement in question was not testimonial hearsay and does not run afoul of *Crawford* and because Curtis' counsel was not ineffective for failing to call Rouson to the stand, there is again no basis for upsetting any of Curtis' convictions.

**CONCLUSION**

Petitioner Curtis had a full and fair trial and sentencing hearing before this court. The court of appeals thoroughly reviewed those proceedings and affirmed in all respects. None of the issues Curtis raises merit post-conviction relief. Instead, this court should respect the jury's decision to convict the defendant of multiple murders plus drug and weapons charges and deny his petition for post-conviction relief.

Respectfully submitted,

JOSEPH S. VAN BOKKELEN
UNITED STATES ATTORNEY


s/ David E. Hollar
David E. Hollar
Assistant United States Attorney

# *Certificate of Service*

I hereby certified that on April 25, 2005 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

**None**

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

**William G Curtis**
05512-027
USP Terre Haute
PO Box 33
Terre Haute, IN 47808

/s/ GLORIA POWELL
Gloria Powell
Legal Assistant