# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.                               **CASE NUMBER**:  2:98-CR-78-003

**WILLIAM CURTIS**,

      Defendant.

## MOTION FOR A REDUCTION OF SENTENCE
## PURSUANT TO SECTION 404 OF THE FIRST STEP ACT

Comes now, Defendant, William Curtis (hereinafter "Mr. Curtis"), by counsel, and files his Motion for a Reduction of Sentence Pursuant to Section 404 of the First Step Act.

### Introduction

On October 13, 2000, Mr. Curtis was found guilty by a jury of six counts. In Count 1, Mr. Curtis was found guilty of conspiracy to distribute in excess of 50 grams of crack cocaine, in violation of 21 U.S.C. § 846. In Count 2, Mr. Curtis was found guilty of employing a juvenile to distribute crack cocaine in furtherance of the conspiracy in violation of 21 U.S.C. § 861(a)(1). In Count 3, Mr. Curtis was found guilty of use of a firearm in furtherance of a drug conspiracy in violation of 18 U.S.C. § 924(j). In Count 4, Mr. Curtis was found guilty of use of a firearm in furtherance of a drug conspiracy in violation of 18 U.S.C. § 924(j). In Count 6, Mr. Curtis was found guilty of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). In Count 7, Mr. Curtis was found guilty of carrying a firearm in connection with drug distribution in violation of 18 U.S.C. § 924(c).

At the time of his convictions, the penalties prescribed in 21 U.S.C. § 841(b)(1)(A) for 50 or more grams of crack cocaine triggered a mandatory minimum of 10 years of imprisonment with a maximum penalty of life. Regarding Counts 1, 2, and 6, Mr. Curtis was found to be responsible for over 1.5 kilograms of crack cocaine. [PSR, ¶ 33]. At the time of his sentencing, this amount of crack cocaine placed him at a base offense level 38. [PSR, ¶ 33]. Mr. Curtis received a two level increase for using a minor to commit or assist in the offense under § 3D1.4. [PSR, ¶ 36]. Regarding Counts 3 and 4, a violation of 18 USC § 924(j) points to U.S.S.G. 2A1.1, and called for a base offense level of 43, or life. Regarding Count 7, the guideline for 18 U.S.C. § 924(c) is a statutory consecutive 60 month sentence.

On June 1, 2001, the Court sentenced Mr. Curtis as follows: Count 1, life; Counts 2 and 6, 480 months concurrently; Count 3, life; Count 4, life; and Count 7, 60 months consecutively. Regarding supervised release, Mr. Curtis received a total term of 8 years (5 years on Counts 1 and 6, 8 years on count 2, and 3 years on each of counts 3, 4, and 7 to run concurrently). [DE 679].

## The First Step Act of 2018

The Anti-Drug Abuse Act of 1986, 100 Stat. 3207, established statutory penalties for crack cocaine offenses that were far more punitive than those for powder cocaine offenses by treating each gram of crack the same as 100 grams of powder. That penalty structure was the law when Mr. Curtis was sentenced on June 1, 2001.

On August 3, 2010, in light of the longstanding and widespread recognition that penalties for crack cocaine were far too harsh, Congress enacted the Fair Sentencing Act of 2010 (hereinafter: "Fair Sentencing Act"). See *Kimbrough v. United States*, 552 U.S. 85, 97-99 (2007); *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). Section 2 of the

Fair Sentencing Act modified the statutory penalties for crack offenses by increasing the amount of crack necessary to support the statutory ranges for convictions under § 841(b)(1)(A) from 50 to 280 grams, for convictions under § 841(b)(1)(B) from 5 to 28 grams, and for convictions under § 841(b)(1)(C) from less than 5 grams to less than 28 grams. *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010)[1]. The purpose of the Fair Sentencing Act was to "restore fairness to Federal cocaine sentencing," *id.*[2] However, the Fair Sentencing Act did not provide relief to defendants like Mr. Curtis who were sentenced before its enactment, leaving intact many sentences imposed under the pre-Fair Sentencing Act penalty structure.

On December 21, 2018, the First Step Act was signed into law. Section 404 of the Act makes sections 2 and 3 of the Fair Sentencing Act retroactive. *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (codified at 21 U.S.C. § 841 note). Section 404 authorizes a court "that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect," Sec. 404(b), and defines a "covered offense" as a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3, 2010," Sec. 404(a). The court may not entertain a motion in two limited circumstances:  if "the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or "a previous motion made under this

---

[1] Section 3 of the FAIR SENTENCING ACT eliminated the mandatory minimum for simple possession of crack cocaine under 21 USC 844(a).  Pub. L. No. 111-220, § 3; 124 Stat. 2372.

[2] Letter from Senators Durbin and Leahy to Attorney General Holder (Nov. 17, 2010), https://sentencing.typepad.com/files/fair-sentencing-act-ag-holder-letter-111710.pdf.

section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." Sec. 404(c). "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*

In other words, any defendant who committed a crack offense before August 3, 2010 who is still serving a sentence for that offense is eligible for imposition of a reduced sentence.[3] See § 404(a), (c). The court may impose a reduced sentence for any eligible defendant as if section 2 of the Fair Sentencing Act were in effect. *See* § 404(b).

## ARGUMENT

## I.    Mr. Curtis is Eligible for Imposition of a Reduced Sentence

Mr. Curtis is eligible under the plain terms of Section 404(a) that define a "covered offense" as a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act, that was committed before August 3, 2010." Thus, a defendant who committed a crack offense before August 3, 2010 is eligible if the statutory penalties for the statute of which he was convicted were modified by section 2 or 3 of the Fair Sentencing Act. The text "mak[es] clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct." *United States v. Rose*, 379 F.Supp.3d 223, 2019 WL 2314479, at *3 (S.D.N.Y. May 24, 2019).

"This is a categorical decision based on the type of prior conviction, not any particular quantity determination." *United States v. Boulding*, 379 F.Supp.3d 646, 654 (W.D. Mich. May 16, 2019). "[T]he quantity of drugs involved in the conviction [is] not a condition of eligibility, whether such quantity was charged in the indictment, found by a

---

[3] On June 21, 2012, the Supreme Court held that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, including those who committed the offense before that date. *See Dorsey v. United States*, 567 U.S. 260, 282 (2012).

jury, admitted by the defendant, or determined in a presentence investigation report."

*United States v. Pride*, 2019 WL 2435685, at *4 (W.D. Va. June 11, 2019). If the "offense

of conviction was a crack cocaine offense affected by the Fair Sentencing Act[,] the

defendant is categorically eligible for consideration regardless of actual quantities."

*Boulding* at 651.

Nearly every court to address the issue has adopted this straightforward reading.

*See, e.g., United States v. Cole*, 2019 WL 3406872, at *3 (N.D.IN July 29, 2019) ("Nearly

every district court considering the issue has interpreted the plain language of the First

Step Act, and held that it is 'the statute of conviction, not actual conduct, that controls

eligibility under the First Step Act.'"); *United States v. Davis*, 2019 WL 1054554, at **2-

3(W.D.N.Y. Mar. 6, 2019) ("Under the plain language of the Act, [if] the statute that the

defendant violated . . . is one for which the statutory penalties were modified by section

2 or 3 of the Fair Sentencing Act, it is a 'covered offense.' . . . [I]t is the statute of

conviction, not actual conduct, that controls eligibility under the First Step Act.");

*United States v. Dodd*, 372 F.Supp.3d 795, 797 (S.D. Iowa 2019) ("The First Step Act . . .

applies to offenses and not conduct.").[4]

---

[4] *See also, e.g., United States v. Vanzant*, 2019 WL 3468207 (S.D. Ala. July 31, 2019) ("quantity charged in the indictment" controls eligibility); *United States v. Hill*, 2019 WL 3325801 (C.D. Ill. July 24, 2019) (The court held that "[e]ligibility is determined by the conviction amount, not the actual conduct." Id. at *1 (citing *US v. Rodriguez*, 67 F.3d 1312 (7th Cir. 1995)); *United States v. Springs*, 2019 WL 3310092 (W.D.N.C. July 23, 2019) (The court concluded that [the defendant's] eligibility is determined by the statute to which she pleaded guilty, although she stipulated in the plea agreement that the offense involved a greater quantity of crack); *Kemper v. United States*, No. 5:92-CR-00013-FB (W.D. Tex. July 24, 2019), ECF No. 132 (The court ruled that the *Apprendi/Alleyne* doctrine applies to sentence reductions under the Act and that eligibility is "determined by the amount charged in the indictment, rather than the amount admitted in the plea agreement or found at sentencing." *Kemper*, at 7.); *United States v. Martin*, 2019 WL 2571148, at *3 (E.D.N.Y. June 20, 2019) ("[T]he statute of conviction, not actual conduct, controls."); *United States v. Barber*, 2019 WL 2526443, at *2 (D.S.C. June 19, 2019) ("It is the statute of conviction, not actual conduct, that determines eligibility for relief under the First Step Act."); *United States v. Shaw*, 2019 WL 2477089, at *4 (W.D. Wis. June 13, 2019) ("[E]ligibility under the First Step Act is determined by looking at the statute of conviction, not the defendant's

The First Step Act provides that defendants who were previously convicted of a crack cocaine offense who had their statutory range modified by the Fair Sentencing Act, but were not permitted to seek a reduced sentence because the law was not made retroactive, are now eligible for a reduced sentence. *Cole* at *3.

In *Cole*, the defendant was charged in a four count Indictment that included drug and gun offenses. In Counts 3 and 4, the defendant was charged with possessing with intent to distribute 5 grams or more but less than 50 grams of cocaine base "crack" in violation of 21 U.S.C. § 841(a)(1). In Count 4, the defendant was charged with carrying a firearm during and in relation to that drug trafficking crime in violation of 18 U.S.C. § 924(c). Count 3 was based on actual conduct involving 42.2 grams of crack cocaine and carried a mandatory minimum of five years. Count 4 carried a mandatory consecutive

conduct."); *United States v. Jones*, 2019 WL 2480113, at *3 (E.D.N.C. June 11, 2019) (eligibility is determined by analyzing whether "the statutory penalty for … the offense of conviction … was modified by the [Fair Sentencing Act]"); *United States v. Allen*, 384 F.Supp.3d 238, 241 (D. Conn. Apr. 26, 2019) ("it is the statute of conviction, not actual conduct, that controls eligibility"); Order at 2, *United States v. Turner*, No. 06-0274 (D. Md. June 28, 2019) ("statutory maxim and minimum penalties must be based on the specific offense charged in the indictment and proven at trial, not based on underlying facts established at sentencing"); Order Granting Defendant's Motion for Reduction in Sentence Pursuant to the First Step Act at 9-14, *United States v. Robinson*, No. 89-cr-4006 (N.D. Fl. June 26, 2019) (finding the government's interpretation "strained" and concluding that if the "federal criminal statute is one for which the statutory penalties were modified by [the Fair Sentencing Act], it is a 'covered offense'"); Memorandum Re: Defendant's Eligibility for Reduction of Sentence under the First Step Act at 4, *United States v. Matos*, No. 08-30019 (D. Mass. June 4, 2019) ("Eligibility for relief under the First Step Act is explicitly governed by the statute" under which the defendant was convicted, "not by details in the PSR describing the alleged underlying conduct."); Order Granting Defendant's Motion for Reduction in Sentence Pursuant to the First Step Act at 9, *United States v. James*, No. 90-cr-04051 (N.D. Fl. May 21, 2019) (the "statute of conviction … and not actual conduct, controls eligibility"); Order and Opinion, *United States v. Haynes*, No. 4-cr-20045 (C.D. Ill. May 1, 2019) ("[I]t is the statute of conviction, not actual conduct, which controls eligibility under the First Step Act."); *United States v. Outler*, No. 1:06-CR-291, Dkt. No. 49 at 4 (E. D. Va. Apr. 26, 2019) ("Subsection (a), much like (b), focuses not on a defendant's actual conduct but rather on the statutory penalties whose triggers were changed in the Fair Sentencing Act."); Order, *United States v. Broussard*, No. 02-00210 (D. Minn. Apr. 19, 2019) ("First Step Act [eligibility] is determined by [] the statute of conviction, not the defendant's conduct."). As the government has conceded elsewhere, the "few cases that cut against the grain" are "outliers." *United States v. Martinez*, 2019 WL 2433660 at *3 (S.D.N.Y. June 11, 2019) ("The Government has done its best to corral the few cases that cut against the grain, *see, e.g., United States v. Blocker*, 378 F. Supp. 3d 1125 (N.D. Fla. Apr. 25, 2019), but it concedes that these decisions are outliers.").

sentence of not less than five years. The government also filed its notice under 21 U.S.C. § 851(a)(1) alleging that the defendant had a prior felony drug conviction which doubled the statutory drug penalty in Count 3 to a mandatory 10 years. Combined with the mandatory minimum of five years in Count 4, the defendant was facing a mandatory minimum of 15 years or 180 months imprisonment. *Cole* at *1.

The defendant pled guilty to Counts 3 and 4. In addition to the aforementioned statutory mandatory minimum penalties, the defendant was determined to be a career offender under U.S.S.G. § 4B1.1 based on two prior controlled substance offenses. Based on this determination, the defendant faced a sentencing guideline range of 262 to 327 months. However, in his plea agreement, the parties agreed to a binding sentence of 240 months. In reliance on that plea agreement, Judge Lee sentenced the defendant to 180 months imprisonment for Count 3 and a 60 month consecutive sentence for Count 4. *Id*.

The defendant in *Cole* recently moved for a reduced sentence pursuant to the First Step Act. Over the government's objection, Judge Lee determined the defendant was eligible for a reduced sentence. Ruling in a manner consistent with most courts which have addressed this issue, Judge Lee found that the change in the statutory threshold in Count 3 was enough to trigger eligibility and a resentencing regardless of the weight of drugs attributed to the defendant at his sentencing hearing. *Id*. at *4. Judge Lee noted that a "[r]eview under the First Step Act is a two-step process."  He wrote the following:

> The first step is determining eligibility. Once a defendant is
> determined to be eligible for a reduced sentence, the Court
> then determines whether to exercise its discretion to reduce
> the defendant's sentence. This determination is informed by
> a guideline comparison between the guidelines as they existed

during the original sentencing and the guidelines as they exist
today, as well as from any other information the parties present
or the Court chooses to consider. Based on this information, the
Court will then determine the extent of any reduction it decides
in its discretion to award, consistent with statutory limits,
non-binding guideline considerations, and the § 3553 factors.

*Id.* at *2.

Like the defendant in *Cole*, Mr. Curtis is eligible for a reduced sentence because

the statutory range in Counts 1 and 6 were changed by the Fair Sentencing Act. In Count

1, he was convicted of conspiracy to possess with the intent to distribute and distribution

of 50 or more grams of crack cocaine in violation of 21 U.S.C. § 846. [5] The statutory

penalties for a crack cocaine in 21 U.S.C. 841(b) were modified by section 2 of the Fair

Sentencing Act. Therefore, he is eligible under the plain text of the First Step Act. The

Addendum to the Presentence Investigation Report, prepared by the U.S. Probation

Office at this Court's direction, incorrectly concluded that Mr. Curtis was ineligible for a

reduced sentence under the First Step Act because of the drug quantity determined in

the Presentence Report rather than the drug quantity alleged in the indictment.  [DE

1274]. As noted by Judge Lee, the only relevant inquiry is impact on the "statute of

conviction" rather than a defendant's "actual conduct." *Id*. at *3.

"[N]othing in the First Step Act conditions eligibility for a reduced sentence on a

lowered guideline range." *United States v. Shelton*, 2019 WL 1598921, at *2 (D.S.C.

Apr. 15, 2019). "The word 'statutory' in Section 404(a) indicates that the penalties

modified must be the penalties prescribed by statute, as opposed to a change in the

Sentencing Guidelines." *United States v. Martin*, 2019 WL 2571148, at *3 (E.D.N.Y.

---

[5] 21 U.S.C. § 846 provides that "Any person who attempts or conspires to commit any offense defined in this
subchapter shall be subject to the same penalties as those proscribed for the offense, the commission of which was
the object of the attempt or conspiracy."

June 20, 2019); *Boulding* at 353 ("[Defendants who scored under guidelines as career offenders . . . now have an opportunity to obtain relief under the First Step Act even though their technical guideline range remains unaffected.").

If the court were to require a lower guideline range, it would be treating Mr. Curtis's motion as if it were a § 3582(c)(2) motion. Section 3582(c)(2) permits courts to reduce a "term of imprisonment" based on a subsequently lowered guideline range, and only if such reduction is "consistent with" Commission policy statements. Among other things, the policy statement requires a lowered guideline range and prohibits variances. *See* U.S.S.G. § 1B1.10(b)(1), (b)(2)(A). As the Supreme Court noted in *Dillon v. United States*, 560 U.S. 817 (2010), § 3582(c)(2) permits courts to reduce a sentence only "in circumstances specified by the Commission," *id*. at 825, and also "constrain[s]" the courts' power through Commission "statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Id*. at 826. The court must follow §1B1.10's instructions in determining "eligibility," in what circumstances it may reduce a sentence, and "the extent of the reduction authorized." *Id*.

Section 404 contains no reference to a guideline range lowered by the Sentencing Commission, contains no reference to policy statements issued by the Commission, and does not authorize the Commission to issue policy statements specifying in what circumstances or by what amount the court may impose a reduced sentence. Compare 28 U.S.C. § 994(u). To the contrary, Congress directed courts to conduct a "complete review on the merits." *See* First Step Act, § 404(c).

Accordingly, § 3582(c)(2) has nothing to do with Section 404 of the First Step Act. *See* Order Granting Defendant's Motion for Reduction in Sentence Pursuant to the

First Step Act at 14-15, *United States v. Robinson*, No. 89-cr-4006 (N.D. Fl. June 26, 2019) (First Step Act motions "are not subject to the limitations imposed by § 3582(c)(2)," including that the guideline range "has subsequently been lowered"); *United States v. Pride*, 2019 WL 2435685, at *6 (W.D. Va. June 11, 2019) (Section 404 "does not establish procedures like those in § 3582(c)(2) that narrow the scope of the sentence reduction."); *Boulding* at 653 (Unlike § 3582(c)(2), "the First Step Act does not impose any artificial or guideline limits on a reviewing court," and the "Sentencing Commission has nothing to do with it."); *United States v. Dodd*, 372  F. Supp. 3d  795, 797  (S.D. Iowa Apr. 9, 2019) ("[T]his argument [by the government] rests on a misplaced equivalency with sentence reductions under 18 U.S.C. § 3582(c)(2), a narrow avenue limited by the U.S. Sentencing Commission [pursuant to] 28 U.S.C. §§ 994(o) and 994(u) and U.S. Sentencing Guidelines § 1B1.10."); *United States v. Copple*, 17-CR-40011, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019) ("[T]he sentencing changes wrought by the retroactive application of the Fair Sentencing Act are not the result of the Sentencing Commission's revision to the Sentencing Guidelines but Congress' enactment of a new statute.  Therefore, by its plain terms, § 3582(c)(2) cannot apply.").

Nor is a lower guideline range required for imposition of a reduced sentence under Section 404(b).  As explained below, courts are free to impose a reduced sentence below the applicable guideline range, whether it has changed or not.  Requiring a lower guideline range to obtain relief under the First Step Act would treat the guidelines as mandatory, and thus violate the Sixth Amendment.  *See United States v. Booker*, 543 U.S. 220 (2005).

## II.   The Court Should Exercise Its Discretion to Impose a Reduced Sentence As If Section 2 of the FSA Were in Effect.

### A.   The court has broad discretion to impose a reduced sentence.

Section 404(b) authorizes courts to "impose a reduced sentence" "as if" Section 2 of the FSA "were in effect." Other than any mandatory minimum that may apply under Section 2 of the FSA, it places no limit on the extent to which the court may reduce a sentence, and it places no restriction on what the court may consider in imposing a reduced sentence. Whether to grant an eligible defendant's motion is within the court's discretion, after a complete review on the merits. *See*, *e.g.*, *Boulding* at 653 ("The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds."); *United States v. Shelton*, 2019 WL 1598921, at *2 (D.S.C. Apr. 15, 2019) ("In deciding whether to impose a reduced sentence, the court will consider the new statutory range, the guideline range, the factors in 18 U.S.C. § 3553(a), and evidence of post-sentencing mitigation.").

### B.   The quantity element of which the defendant was convicted determines the statutory range under section 2 of the Fair Sentencing Act.

In determining the defendant's statutory range "as if" section 2 of the Fair Sentencing Act "were in effect," courts use the quantity element of which the defendant was convicted, and have rejected the government's argument that it should base the statutory range on a quantity recited in the PSR or in the factual basis of a plea agreement. This only makes sense and to do otherwise would violate the Constitution. *See*, *e.g.*, Order at 3-4, *United States v. Outler*, No. 06-cr-291 (E. D. Va. Apr. 26, 2019) (rejecting government's argument that it should use facts stipulated in plea agreement and findings in PSR); *United States v. Thomas*, 2019 WL 2375133 at *2 (S.D. Al. Jun. 5,

2019) (rejecting government's argument that the court should use 37 grams stated in the plea agreement rather than the 5-gram quantity element to which the defendant pled guilty to determine his statutory range "as if" the Fair Sentencing Act had been in effect); Order at 3-4 & n.1, *United States v. Wester*, No. 97-8032 (S.D. Fla. June 14, 2019) ("Since the jury verdict does not specify the precise amount of crack cocaine defendant possessed, and [*Apprendi* and *Alleyne*] require[] such a finding in order to enhance the sentence," court "declines to look at the actual offense conduct" in the PSR "and instead looks to the offense of conviction."); *United States v. Shaw*, 2019 WL 2477089, at \*\*2-3 (W.D. Wis. June 13, 2019) (rejecting government's argument that by agreeing in his plea agreement that relevant conduct would be used to determine his guideline range, defendant was "found guilty" of possessing with intent to distribute 41 grams of crack, and agreeing with defendant that he "cannot be found guilty of distributing a greater amount of crack cocaine than the [5-gram] amount charged against him in 2003"); *United States v. Booker*, 2019 WL 2544247, at \*3 (N.D. Ill. June 20, 2019) (applying quantity element to determine statutory range under Section 404(b); *Boulding* at 656 & n.6 (holding that "the actual offense conduct quantities . . . do not substitute for a required element of . . . the offense of conviction whether established by jury verdict or guilty plea," and noting that "*Apprendi* and *Alleyne* ha[ve] genuine bite here"). Uncharged judge-found information about quantity is used only to determine the guideline range under § 2D1.1 if it applies. *See*, *e.g*., Order Granting Defendant's Motion for Reduction in Sentence Pursuant to the First Step Act at 13, *United States v. Robinson*, No. 89-cr-4006 (N.D. Fl. June 26, 2019).

**C.      The court should consider all relevant factors in exercising its discretion.**

Congress' choice of the verb "impose" (instead of "modify" or "reduce") in Section 404(b) is significant. Federal sentencing statutes use the verb "impose" to mean "sentence" in light of all relevant factors. *See*, *e.g*., 18 U.S.C. § 3553(a) ("The court shall *impose* a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); § 3553(a)(2) (directing courts to  consider "the need for the sentence *imposed*" in light of the purposes of sentencing); § 3553(c) ("Statement of Reasons for *Imposing* a Sentence. The court, at the time of sentencing, shall state in open court the reasons for its *imposition* of the particular sentence"); § 3661 ("No limitation may be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of *imposing* an appropriate sentence).

Where a statute places no restriction on the factors a court may consider in imposing a reduced sentence, the court may consider all relevant § 3553(a) factors. *See*, *e.g*., *Pepper v. United States*, 562 U.S. 476, 492-3, 503 (2011) (post-sentencing developments, whether favorable or unfavorable to the defendant, bear directly on the court's duty to impose a reduced sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing). In *Pepper*, the Court found that there is no congressional policy to prohibit courts' consideration of post sentencing developments in any context, including at resentencing after reversal on appeal, or "resentencings that occur for [other] reasons." *Id*. at 499.

In the context of the First Step Act, several courts have agreed. *See United States v. Martin*, 2019 WL 2571148, at *3 (E.D.N.Y. June 20, 2019) ("I agree that the text of the

First Step Act, read in conjunction with other sentencing statutes, requires [the court] to consider all relevant facts, including developments since the original sentence."); *United States v. Rose*, 379 F.Supp.3d 223, (S.D.N.Y. May 24, 2019)(explaining that the text of the statute in conjunction with other sentencing statutes, including § 3661 and § 3553(a); *United States v. Robinson*, No. 89-CR-4006 (N.D. Fl. June 26, 2019) ("Like the court in *Rose* (and other courts as well), I conclude that, in exercising my discretion under the First Step Act, I may consider the applicable statutory limits, the non-binding Sentencing Guidelines, the sentencing factors set forth in 18 U.S.C. § 3553, the defendant's age, and post-sentencing conduct.")

Congress has decided that the former penalty structure overstates the seriousness of crack offenses. See, e.g., *United States v. Biggs*, 2019 WL 2120226 at *4 (N.D. Ill. May 15, 2019) ("[T]he Fair Sentencing Act and the First Step Act reflect Congress' judgment that shorter prison sentences adequately reflect the seriousness of crack offenses. The court is *required* to consider all relevant factors under the framework of § 3553(a). *See Rose*, 379 F. Supp. 3d 223, 2019 WL 2314479, at *8 ("It is unlikely that Congress intended to give district courts unbounded or unreviewable discretion to grant or deny relief.").

## D.   The court may impose a sentence below the guideline range, whether it changes or not.

As already noted, a lowered guideline range is not required for eligibility under Section 404(a). *See,  e.g., Shelton*, 2019 WL 1598921 at *2 ("[N]othing in the First Step Act conditions eligibility for a reduced sentence on a lowered guideline range"). Nor is a lower guideline range required for imposition of a reduced sentence under Section

404(b). To the contrary, courts grant relief by varying from the guideline range whether it has changed or not.

In *United States v. Henderson*, No. 6:05-CR-60040-01, 2019 WL 3211532 (W.D. La. July 15, 2019), Henderson was convicted of both conspiracy and distribution of over 50 grams of cocaine base. At sentencing, Henderson's guideline range, based on drug quantity, was 292 to 365. He was sentenced to 296. That sentence was reduced, pursuant to a guideline amendment, to 240 months. The court determined that Henderson's guideline range today is 235 to 293, making his previously imposed sentence of 240 within the new range. After a request to modify sentence under the FSA, the court imposed a variance of time served, after Henderson had already served 168 months. Thus, the court granted a reduction and imposed a variance although the current sentence was already within the new guideline range. The court applied § 3582(c)(1)(B) and the § 3553(a) factors, including consideration of post-sentencing conduct.

In *United States v. Vanburen*, No. 3:00-CR-00066-1, 2019 WL 3082725 (W.D. Va. July 15, 2019), a jury found *Vanburen* guilty of conspiracy to PWID and distribution of more than 50 grams of cocaine base. The government had filed a § 851 notice of a prior drug conviction. His mandatory guideline range based on drug quantity was life. *Vanburen* was sentenced to life. Today, his guideline range has not changed and is still life, but that range is advisory. *Vanburen* had served approximately 209 months. After filing a request for a reduction under the FSA, the court reduced his sentence and imposed a sentence of 264 months. Here, the court applied both § 3582(c)(1)(B) and the § 3553(a) factors.

In *United States v. Williams*, No. 03-CR-1334 (JPO), 2019 WL 2865226 (S.D.N.Y. July 3, 2019), Williams' guideline range was life, but he was sentenced to the applicable mandatory minimum of 240 months. Applying the FSA, his statutory minimum is reduced to 10 years and his guideline range is 234 to 405 months. He had served almost 16 years of his sentence. The court applied the factors under § 3553(a) and imposed a reduced sentence of time served, or approximately 192 months, which is below the new range.

In *United States v. Robertson*, No. 2:06-CR-00301-LA (E.D. Wis. July 1, 2019), ECF No. 70. Robertson was sentenced to 120 months (range was 121 to 151) for a violation involving 50 grams or more of crack cocaine, and a consecutive 60 months for a violation of § 924(c). The PSR determined the offense involved 394 grams of crack and 967 grams of powder cocaine; the powder did not impact the offense level under the drug equivalency tables. He was denied a reduction under Amendment 750 because his guideline range remained the same and the 10-year minimum still applied. His minimum is now 5 years and his range on the drug offense is now 100 to 125 months. Even though his current sentence was already within that range, the court imposed a reduced sentence of 95 months.

The court recognized that the 95 month sentence it imposed might result in immediate release plus some change, i.e., banked time. But it was willing to risk creating some small term of banked time in order to guarantee Robertson's immediate release on both the drug and gun offense, and avoid a situation where a time served sentence might delay his release if the BOP were to interpret that as terminating his drug sentence and commencing his consecutive firearm sentence. Also, it says no harm would be done by creating some limited term of banked time because whatever quantity of banked time

16

that resulted wouldn't go far given the substantial prison time Robertson would face for a violation of supervised release.

There are countless other examples of recent cases where Courts have determined that a lowered guideline range is not required for eligibility under Section 404(a). *See also, e.g., United States v. Ancrum*, 2019 WL 2110589 (W.D. Va. May 14, 2019) (imposing reduced sentence where guideline range was unchanged); Order, *United States v. Leon*, No. 93-199 (D. Conn. May 20, 2019) (same); *United States v. Biggs*, No. 05-316, 2019 WL 2120226 (N.D. Ill. May 15, 2019) (same); *United States v. Powell*, 360 F. Supp. 3d 134, 139-140 (N.D. N.Y. 2019) (same); Resentencing Proceedings Transcript, *United States v. Potts*, No. 98-14010 (S.D. Fla. Apr. 26, 2019) (same); Order, *United States v. Shelton*, No. 7-329 (D.S.C. May 2, 2019) (same); Memorandum Opinion, *United States v. Monroe*, No. 94-41 (W.D. Va. Feb. 19, 2019) (same); *Boulding* at 653 ("[D]efendants who scored under guidelines as career offenders . . . now have an opportunity to obtain relief under the First Step Act even though their technical guideline range remains unaffected.").

In our case, the U.S. Probation Office determined the offense involved a final amount of over 1.5 kilos of crack cocaine, and mentions a total amount of 4.11 kilos of crack cocaine in Paragraph 17 of the PSR [not included on the docket]. Prior to the passage of the FSA, Mr. Curtis would have been denied a reduction under Amendment 750 because his guideline range remained the same and the 10 year mandatory minimum still applied. Now, after the application of the FSA, his mandatory minimum is 5 years and his range on the drug offense is 78 to 97 months. Post FSA and *Alleyne v. United States*, 570 U.S. 99 (2013), Mr. Curtis's guideline range has changed. The Court should exercise its discretion to fashion a sentence closer to the applicable guideline

range. However, assuming arguendo that the current range of 235 to 293 months (based on non-jury found facts as determined by the USPO) did not change, and remained 292 to 364, as outlined above, courts all over the country have reduced the sentences of defendants whose guidelines ranges did not change. For the foregoing reasons, we respectfully request that this Court reduce Mr. Curtis's sentence to a sentence of time already served, or approximately 257 months.

### E. The Court should allow Mr. Curtis to be present unless waived.

Rule 43(a) requires the defendant's presence at sentencing. Rule 43(b)(4), entitled "Sentence Correction," provides that a defendant "need not be present" when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." Some courts have said that because § 3582(c)(1)(B) describes Section 404 proceedings, the defendant has no right to be present. Other courts have held that the defendant has a right to be present (which may be waived), or have allowed defendants to be present and welcomed the defendant's allocution to assist the court in exercising its discretion under Section 404. *See*, *e.g*., Resentencing Proceedings Transcript, *United States v. Potts*, No. 98-14010 (S.D. Fla. Apr. 26, 2019); *Rose* at 223, 233 n.7; *United States v. Powell*, 360 F. Supp. 3d 134, 135 (N.D. N.Y. 2019); Transcript at 2, 15, 22-28, *United States v. Leon*, No. 93-199 (D. Conn. May 20, 2019); Memorandum at 2, *United States v. Martinez,* No. 4-48 (S.D.N.Y. June 11, 2019); *see also* Order Granting Motion to Reduce Sentence Under First Step Act at 4 & n.1, *United States v. Lowder*, No. 5:07-cr-00008 (M.D. Ga. June 28, 2019) (finding that First Step Act does not require a "plenary" resentencing hearing at which the defendant is "entitled" to be present, but "nothing in the Act or [§ 3582(c)(1)(B)] prohibits a court from holding such a hearing either.").

In the event that this Court imposes a sentence of time served, Mr. Curtis would waive his right to be present at a resentencing hearing. While Mr. Curtis has a right to be present at sentencing pursuant to Rule 43(b)(4), should the Court accept Mr. Curtis's motion and grant the requested relief, Mr. Curtis waives his right to a sentencing hearing, his presence at any sentencing hearing, and his right to allocution to the extent the First Step Act provides such rights. Should the Court not grant the requested relief, Mr. Curtis requests a full re-sentencing.

### F.    No "windfall" or "unwarranted disparity" would result from applying the plain statutory language and complying with the Constitution.

Notwithstanding the plain statutory language and constitutional requirements, the government may argue that the Court should refuse to reduce Mr. Curtis's sentence. The government may argue that it could have charged Mr. Curtis with the new threshold quantity had the FSA been in effect, may suggest that Mr. Curtis would be put in a better position than those sentenced after the enactment of the Fair Sentencing Act, and may state that he would receive a windfall and unwarranted disparity would result relative to defendants sentenced after the FSA. If this argument is advanced, this argument amounts to a disagreement with congressional policy and is not a basis to ignore the plain language. Use of this argument would be misguided and inaccurate for multiple reasons.

Congress passed the FSA of 2010 and Section 404 of the First Step Act (FSA) of 2018 precisely because the previous penalty structure resulted in grossly disproportionate sentences and had a racially disparate impact. *See Kimbrough v. United States*, 552 U.S. 85, 97-99 (2007); *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012); President Donald J. Trump, Remarks by President Trump at 2019 Prison

Reform Summit and FIRST STEP Act Celebration (Apr. 1, 2019) (declaring the First Step Act "rolls back [a law] that was so devastating to so many and that disproportionately impacted the African American community.").[6] Allowing courts to resentence defendants like Mr. Curtis who were sentenced before the FSA reduces unwarranted disparity; it does not create it.

Moreover, defendants sentenced after the FSA have had the benefit of the amended statutory penalties based on their statute of conviction, as well as other changes in law that were not available to Mr. Curtis and others similarly situated. Mr. Curtis will not get a "windfall" compared to defendants sentenced after the FSA. Allowing courts to resentence defendants like Mr. Curtis who were sentenced before the FSA does not create "windfalls."

Further, whatever the government may say about what it "could have charged," courts cannot constitutionally assume that a jury would have convicted a defendant, or that he would have pled guilty, to an aggravated offense. *See Rose* at 236 ("The Court cannot simply assume that the Government would have been successful in proving an indispensable element of a criminal offense."); Memorandum Re: Defendant's Eligibility for Reduction of Sentence under the First Step Act at 6, *United States v. Matos*, No. 08-30019 (D. Mass. June 4, 2019) (treating the defendant as if he had been convicted of an offense involving a greater quantity "well after the fact and without jury consideration," would "raise serious issues" under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne*); Order at 3 n.3, *United States v. Lovely*,  No. 2:06-CR-00062 (D. Me. Apr. 17, 2019) (rejecting  government's argument in part because "the burden of proof at

---

[6] Available at https://www.whitehouse.gov/briefings-statements/remarks-president-trump-2019-prison-reform-summit-first-step-act-celebration/.

sentencing is much lower than at conviction, and … the Rules of Evidence do not apply"); *United States v. Franci*s, 2019 WL 1983254 (S.D. Ala. May 3, 2019) ("In other words, the United States would ask this Court to violate *Apprendi* by finding unilaterally that the conspiracy involved more than 280 grams of crack cocaine. The Court declines to do so."). "The Sixth Amendment requires more than … speculation about a hypothetical jury's action . . . ; it requires an actual jury finding of guilty." *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993).

Courts have declined "to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered." *United States v. Dodd*, 372 F.Supp.3d 795, 799 (S.D. Iowa 2019). *See also United States v. Anderson*, 2019 WL 2410077 at *1 (S.D. Fl. June 7, 2019) ("The Court refuses to speculate as to the charges that may have been brought against this Defendant and to which he may have pled guilty, had the law in effect today been the law at the time that he was charged. . . . [T]he Court considers the conduct for which the Defendant pled guilty."); *United States v. Martin*, 2019 WL 2571148, at *4 (E.D.N.Y. June 20, 2019) (such a "speculative claim is insufficient"); Order at 2, *United States v. Turner*, No. 06-0274 (D. Md. June 28, 2019) (declining to "assume that the Government necessarily would have charged Turner, or that Turner would have pled guilty to," possession with intent to distribute 28 grams or more).

In fact, Congress "did not direct courts to speculate about what the government might have charged," *United States v. Davis*, Order Granting Defendant's Motion for a Reduced Sentence at 10, No. 4:92-CR-04013 (N.D. Fla. Mar. 6, 2019), or to "assume" that defendants "would have pleaded guilty, or been found guilty at trial, if the government had charged the increased drug quantity." *United States v. Jones*, 2019 WL

2480113, at *4 (E.D.N.C. June 11, 2019) (such an interpretation would produce "absurd results"). Moreover, this course of action "would create a burden on courts and parties that if actually intended by Congress would have been explicitly mandated in the plain language of the statute." Order at 3, *United States v. Turner*, No. 06-0274 (D. Md. June 28, 2019).

Consider *United States v. Blocker*, where the court found that the government "would have" charged at least 280 grams. Over the defendant's constitutional objection, the court took the government up on its offer to prove it with the testimony of law enforcement officers. *See* Order for an Evidentiary Hearing on the Motion to Reduce the Sentence, *United States v. Blocker*, No. 07-CR-00036 (N.D. Fla. Apr. 25, 2019); Government's Opposition, Dkt. No. 66. The government then filed a notice stating that it could not "reliably establish by a preponderance of evidence or otherwise that Blocker's offense involved more than 280 grams of cocaine base." Government's Notice Concerning Evidentiary Hearing at 2, Dkt. No. 82. *Blocker* only proves that "historical revisionism is an inappropriate judicial exercise." *Rose* at 236.

Likewise, any governmental claim of "disparity" would be misguided. Section 3553(a)(6) provides that sentencing courts should seek to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Anderson*, 2019 WL 2410077 at *1. A "[d]efendant [] found guilty of an offense involving at least 5 grams of crack cocaine [] is not similarly positioned with an offender guilty of an offense involving at least 28 grams." Order Denying Motion to Stay at 5-6, *United States v. Ware*, No. 01-6246 (S.D. Fla. Apr. 30, 2019). As the "comparison group" for Mr. Curtis consists of other defendants convicted of distributing 50 grams or

more of crack, granting Mr. Curtis relief would not create unwarranted disparities. *Rose*,
2019 WL 2314479, at \*9.

Accepting this position (if advanced here) would not only perpetuate unfair
disparities between Mr. Curtis and defendants sentenced after the FSA, but between Mr.
Curtis and the vast majority of similarly situated defendants who have received relief
under the First Step Act. *See* cases collected above. Granting relief would "maintain
consistency" in application of the First Step Act. *United States v. Reed*, No. 5:06-CR-15,
Dkt. 113 at 3-4 (N.D. W. Va. Jun. 5, 2019); *see also United States v. Copeland*, 2019 WL
2090699, at \*3-4 (W.D. Va. May 13, 2019) (government's position would "create
unwarranted sentencing disparities between defendants whose First Step Act motions
were granted"); *United States v. Johnson*, 2019 WL 1186857, at \*3 (W.D. Va. Mar. 12,
2019) ("[T]o refrain from applying the modifications in [this] case would be inconsistent
with previous decisions by this court.").

In any event, even if some defendants sentenced after the FSA might have been
sentenced differently, "whatever 'disparity' that results is the remedy that Congress
intended." *Rose* at 236; *see also Copeland*, 2019 WL 2090699, at \*4 (noting that there is
"always some inherent disparity between defendants when a retroactive change is made,
simply based on timing"); *United States v. Smith*, 379 F. Supp. 3d 543, 548
(2019)(declining to refrain from granting relief because "other defendants may have
been sentenced differently").

If the government advances an argument asserting that had the government
known about the Fair Sentence Act at the time Mr. Curtis was originally indicted, it
would have alleged Count 1 involved more than 280 grams of crack cocaine, that
argument would fail as mere speculation. Congress did not direct courts to speculate

about what the government might have charged. See *Davis*. Treating Mr. Curtis as if he had been convicted of an offense involving a greater quantity well after the fact and without jury consideration, would raise serious issues under *Apprendi* and *Alleyne*. See *Matos*. Historical revisionism is an inappropriate judicial exercise. See *Rose*.

### G.    Application of First Step Act to Mr. Curtis.

Mr. Curtis has been in federal custody since May 27, 1998. In other words, he has been incarcerated over 21 years. He began serving his sentence in this case at the age of 26. He has no projected release date, as he has been sentenced to life. He is currently 45 years old.

During his time in the BOP, Mr. Curtis has had a positive post sentencing record. According to the Summary  Reentry Plan – Progress Report:

> Curtis has acquired skills in inside and outdoor maintenance. He is currently a trusted unit orderly and has been at several institutions in the Bureau of Prisons. He has also gained experienced (sic) in food service work in 2002.

See Exhibit A. As a trusted unit orderly, Mr. Curtis is responsible for keeping the laundry room at USP Atwater clean and sanitized. He is responsible for keeping the interiors of the machines clean and disinfected, while also making sure the laundry room floors are swept, mopped, and free of debris.

Mr. Curtis also has gained expertise in food service. He started out as a dishwasher, and worked his way up to cook. He has also worked at Unicore within the BOP. He turned a industrial roll of terry cloth into towels for inmates by cutting and sewing lengths of cloth. Notably, Mr. Curtis has a reputation for being respectful towards all those around him. His Summary Reentry Plan – Progress Report states the following:

24

> Curtis (sic) demeanor has been said to be respectful and
> hardworking as the Unit Orderly. Curtis exudes continuous efforts
> in self growth and educational growth by exhausting
> programs/resources offered at the High custody prison
> environment, here, at USP Atwater.

See Exhibit A. His dedication to self-growth is evident.

What is notable, is that for someone who has been sentenced to life, he has not

given up. Mr. Curtis has availed himself of scores of available classes. Before being taken

into custody in 1998, Mr. Curtis had only completed the ninth grade at Roosevelt High

School in Gary. He has been taking GED preparation classes on and off for the past

twenty plus years. Mr. Curtis was diagnosed with learning disabilities early in his

childhood, which have impaired his ability to pass the GED test, in spite of many years

of attempts. Nevertheless, he has passed the Language Arts, Social Studies, and Science

sections, and only the Math portion remains.

Mr. Curtis has taken a total of 89 classes from 2001 until the current year of

2019. He has taken classes in communication skills, job searching, anger management,

money and consumers, etiquette, home ownership, listening, goal setting, proof reading,

positive attitude, budgeting, accounting essentials, building trust, face to face

communications, math, clear writing, critical thinking, self esteem, ethics, reading,

drawing, memory, starting a business, determining his life's purpose, financial

statements, resume writing, self-improvement, preparing for an interview, creative

decision making, managing negative people, thinking on his feet, nutrition, wellness,

parenting, human brain & behavior, leadership, and business. See Exhibit A. Mr. Curtis

is currently taking a GED course, which is currently training him to pass his only

remaining GED subject of math. It is an impressive list, and Mr. Curtis has certainly

used his time in custody productively. He has gained a number of new skills that would

make him very employable. In fact, his release planning includes relocating to Memphis, Tennessee to sserve his SR period while living with his Mother, Sandra Curtis on Rhind Lane in Memphis, Tennessee. He intends to seek work in general maintenance upon his arrival to Memphis.

While Mr. Curtis has twenty-nine total listed items on his chronological disciplinary record, the most recent event took place in August 2018 and was for engaging in a group demonstration. At the time, Mr. Curtis was housed in a unit of 100+ individuals who were alleged to have refused to accept their food trays. This event was deemed a "group demonstration." Prior to that, the most recent sanctioned incident took place in 2012 for fighting with another person. Thirteen of the twenty-nine incidents were of a serious nature (six incidents of fighting, three incidents of possessing a dangerous weapon, and four incidents of assaulting without serious injury). The remaining sixteen incidents were of a less serious nature, including refusing to obey an order, failing to follow safety regulations, possessing intoxicants, being insolent to staff, being absent from assignment, using phone or mail without authorization. The majority of these incidents took place over 10 years ago, with all but four taking place before August of 2009. See Exhibit A.

## H.    Supervised Release

Mr. Curtis's supervised release range was also reduced by the First Step Act. The district court originally imposed the mandatory minimum term of supervised release of five years each for Counts One and Six. Under the Fair Sentencing Act of 2010, the new minimum term of supervision on Counts One and Six is four years. Accordingly, Mr. Curtis requests that the Court reduce the term of supervision from five years to four years for Counts One and Six.

## **REQUESTED RELIEF**

For the foregoing reasons, Mr. Curtis respectfully moves that this Court reduce his sentence pursuant to Section 404 of the First Step Act and enter an amended judgment imposing a sentence of 257 months imprisonment and four years supervised release. In the alternative, Mr. Curtis requests that the Court sentence him to "time served" and four years of supervised release with all other provisions of the original judgment entered on June 5, 2001, including the conditions of supervision, remaining the same.

Respectfully Submitted,

Northern District of Indiana Federal
Federal Community Defenders, Inc.

By:    s/Roxanne Mendez Johnson
       Roxanne Mendez Johnson
       2929 Carlson Drive, Suite 101
       Hammond, Indiana 46323
       Telephone: (219) 937-8020
       Fax: (219) 937-8021
       Email: roxanne_johnson@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that, on 11/7/2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

s/Roxanne Mendez Johnson

27